[No. 18829-5-II.   Division Two.   October 4, 1996.]

MARY HARRIS, ET AL., *Appellants,* v. PIERCE COUNTY, ET AL., *Respondents.*

---

[16]*Fondren,* 79 Wn. App. at 854.

*Susan R. Sampson* and *Sampson Wilson & Combs*, for appellants.

*John W. Ladenburg, Prosecuting Attorney*, and *Eileen M. McKain, Deputy*, for respondents.

TURNER, J. — Citizens Against the Trail (CAT) oppose Pierce County's (the County) proposal to establish a multi-use trail. On appeal, CAT argues that the trial court erred in dismissing its petition for a writ of review. It further contends that the final environmental impact statement (EIS) is invalid. We hold that the trial court properly dismissed CAT's petition for a writ of review because the County's actions were legislative in nature and because CAT failed to establish standing. Accordingly, we do not reach the issues regarding the validity of the EIS. We also hold that the trial court did not abuse its discretion in refusing to review a legal memorandum generated by the

County because it was clear that such memorandum was not discoverable. Affirmed.

## FACTS

The Pierce County Comprehensive Park and Recreation Plan (Parks Plan) proposed a system of multi-purpose trails that could be connected to state and national trail systems. The Parks Plan was the product of extensive telephone surveys, public workshops and meetings by a 13-member Planning Advisory Committee, overseen by the Director of the County Parks, Recreation and Community Services Department. This Parks Plan included policies by which to plan and develop future park and recreational facilities within the County. It also included a proposal for the development of a system of multi-purpose trails.

Adopting proposals in the Parks Plan, the Parks Department drafted the Foothills Linear Park/Trail segment of the Nisqually Delta/Mount Rainier Trail Plan (Master Trail Plan). The Master Trail Plan discussed various alternative routes and how to connect such trails to other trails systems to form a continuous trail system from the Nisqually Delta to Mount Rainier. It stated that the preferred alternative was a former Burlington Northern Railroad right-of-way.

In August 1989, the county planning department issued a draft environmental impact statement (DEIS) for the Master Trail Plan. The DEIS examined environmental impacts that would be associated with conversion of either the Burlington Northern Railroad right-of-way or the alternative trail routes. In October 1989, the Planning Department issued the final environmental impact statement (FEIS), which included responses to comments received on the DEIS.

In November 1989, the Pierce County Council adopted the Master Trail Plan. That month, CAT filed an administrative appeal challenging the adequacy of the FEIS. The Hearing Examiner for Pierce County held public hearings

on CAT's appeal and ultimately concluded that the FEIS was in compliance with the law. Accordingly, the Hearing Examiner denied CAT's appeal.

CAT appealed the Hearing Examiner's decision to the Pierce County Council, challenging the FEIS and the Hearing Examiner's findings on numerous grounds. After another public hearing, the Pierce County Council passed Resolution 90-143 to deny CAT's appeal and affirm the adequacy of the FEIS.

In October 1990, after reviewing the record, the County Council adopted Ordinance (PCO) 90-6, which established the Foothills Linear Park/Trail in East Pierce County. The ordinance authorized the County to acquire, construct and maintain the trail.

On October 18, 1990, CAT filed a Petition for Writ of Certiorari and Judicial Review with the Pierce County Superior Court. CAT claimed that the court had jurisdiction under RCW 7.16.030–.370 (certiorari) and PCC § 17.08.260. This Pierce County Ordinance establishes the County's administrative review procedure and mirrors administrative review under the State Environmental Policy Act (SEPA). CAT claimed that the County Council erred in passing Resolution 90-143, which upheld the FEIS, and in passing Ordinance 90-6, which established the Foothills Linear Park/Trail.

After a hearing, the trial court denied CAT's writ of review. The court decided that it did not have authority to review the County Council's legislative actions regarding the trail. It also concluded that: the Trail Plan was a non-project action; that EIS requirements for non-project actions are more flexible; and that the Hearing Examiner's conclusions regarding the adequacy of the EIS were not clearly erroneous. The trial court also denied CAT's motion to compel disclosure of a memorandum prepared by legal counsel for the County Council. CAT then appealed to this court.

## ANALYSIS

### I. Dismissal of CAT's Petition for Writ of Review.

■ Because no statute authorizes a direct appeal in this case, the only potential methods of review are: review pursuant to statutory writ of certiorari, under RCW 7.16.040; and discretionary review pursuant to the court's inherent constitutional powers. *Kreager v. Washington State Univ.*, 76 Wn. App. 661, 664, 886 P.2d 1136 (1994).

■ RCW 7.16.040 limits a writ of review to actions that are judicial or quasi-judicial in nature:

> A writ of review shall be granted by any court, except a municipal or district court, when an inferior tribunal, board of officer, *exercising judicial functions*, has exceeded the jurisdiction of such tribunal, board or officer, or one acting illegally, or to correct any erroneous or void proceeding, or a proceeding not according to the course of the common law, and there is no appeal, nor in the judgment of the court, any plain, speedy and adequate remedy at law.

(Emphasis added.) The following factors help determine if actions taken are judicial or legislative:

> (1) whether the court could have been charged with the duty at issue in the first instance; (2) whether the courts have historically performed such duties; (3) whether the action of the municipal corporation involves application of existing law to past or present facts for the purpose of declaring or enforcing liability rather than a response to changing conditions through the enactment of a new general law of prosecutive application; and (4) whether the action more clearly resembles the ordinary business of courts, as opposed to those of legislators or administrators.

*Raynes v. Leavenworth*, 118 Wn.2d 237, 244-45, 821 P.2d 1204 (1992). Our courts have held the following actions to be legislative in nature and therefore inappropriate for a statutory writ of certiorari: amendments to a zoning

ordinance and the dismissal of the related SEPA[1] appeal, *Raynes*, 118 Wn.2d at 249; the determination of where to locate a highway interchange, *Harris v. Hornbaker*, 98 Wn.2d 650, 658, 658 P.2d 1219 (1983); adoption of county-wide planning policy and related SEPA determinations, *Snohomish County Property Rights Alliance v. Snohomish County*, 76 Wn. App. 44, 882 P.2d 807 (1994), *review denied*, 125 Wn.2d 1025 (1995); adoption of county zoning code, *Leavitt v. Jefferson County*, 74 Wn. App. 668, 875 P.2d 681 (1994).

In the present case, the governmental actions at issue are the County Council's adoption of the Master Trail Plan and dismissal of CAT's related SEPA appeal. An examination of the above factors shows that the council's actions are best characterized as legislative.

██ ██ Clearly a court could not adopt a recreational trail plan for a county. Such policymaking decisions, which are based on the consideration of public opinion, are within the purview of legislative bodies, not courts of law. *See Raynes*, 118 Wn.2d at 245. Second, courts have not historically established recreational trail plans. In an analogous situation, our Supreme Court has recognized that "[t]he determination of where to place a road has traditionally been a distinctly legislative decision." *Harris*, 98 Wn.2d at 658. Moreover, "courts have not historically performed the function of ensuring that counties comply with SEPA." *Property Rights Alliance*, 76 Wn. App. at 50. Third, the council's adoption of the Master Trail Plan did not involve the judicial function of applying law to past or present facts to determine liability. Rather, it was decision to adopt a trail plan to be implemented by the County. Finally, the consideration of public opinion and the use of public comment and debate are legislative functions, not judicial ones.[2]

In sum, because the County Council's actions are more

---

[1] The Washington State Environmental Policy Act, RCW 43.21C.010 –.914.

[2] The council's dismissal of CAT's SEPA appeal is best characterized as legislative action. Our courts have held that the mere fact that rights of specific

akin to legislative action, the trial court properly concluded that it was without authority to grant the statutory writ of certiorari. Accordingly, we affirm that decision.

■ CAT also asserts an entitlement to review by "constitutional" or "common law" certiorari. Under article IV, section 6 of the Washington State Constitution, the superior court has inherent power to review administrative decisions for illegal or manifestly arbitrary and capricious acts. *Bridle Trails Comm'ty Club v. Bellevue*, 45 Wn. App. 248, 251, 724 P.2d 1110 (1986). The decision to grant the common law writ is entirely within the discretion of the superior court, which may refuse to exercise its inherent powers of review upon tenable reasons. *Bridle Trails*, 45 Wn. App. at 252. The party seeking review of an administrative agency decision need not specifically request review under the court's inherent powers. *Leavitt*, 74 Wn. App. at 677 (treating property owners' application for statutory writ of certiorari as an application for a constitutional or common-law writ).

■■ To invoke constitutional certiorari to review actions of an administrative agency, a petitioner must establish standing to challenge the governmental action. *Property Rights Alliance*, 76 Wn. App. at 52.[3] Courts apply a two-part test to determine standing to challenge a SEPA determination under a writ of certiorari: (1) the interest that the petitioner is seeking to protect must be arguably within the zone of interests to be protected or regulated by statute; and (2) the petitioner must allege injury in fact; i.e., that he or she will be specifically and perceptibly

---

parties are at issue in a SEPA appeal or in the passage of an ordinance does not convert legislative matters into quasi-judicial actions. *Raynes*, 118 Wn.2d at 247-48; *Harris*, 98 Wn.2d at 658-59 (even though legislative decisions may appear adjudicatory when groups focus on how the decisions affect individual rights, decisions regarding what is in the best interest of the county and balancing individual rights are legislative).

[3]*See also King County v. Washington State Bd. of Tax Appeals*, 28 Wn. App. 230, 622 P.2d 898 (1981) (petitioner must allege that the agency acted illegally or engaged in arbitrary and capricious actions violative of petitioner's fundamental rights).

harmed by the proposed action. *Trepanier v. City of Everett*, 64 Wn. App. 380, 824 P.2d 524, *review denied*, 119 Wn.2d 1012 (1992); *Property Rights Alliance*, 76 Wn. App. at 52-53.

To ascertain whether CAT has standing, we examine CAT's petition for writ of certiorari and its supporting material. A review of such materials leads to the conclusion that CAT has not demonstrated interests that are within the zone of interests protected by SEPA and has also failed to establish an injury in fact. SEPA is concerned with broad questions of environmental impact. *Property Rights Alliance*, 76 Wn. App. at 52. Accordingly, our courts hold that economic interests are not within the zone of interests protected by SEPA. *Property Rights Alliance*, 76 Wn. App. at 52; *Concerned Olympia Residents for Env't v. Olympia*, 33 Wn. App. 677, 682, 657 P.2d 790 (1983); *see also* RCW 43.21C.010-.020. In its petition for writ of certiorari and judicial review, CAT states that it is "a Washington non-profit corporation whose members consist of residents of Pierce County, Washington and specifically made up of members who may be affected by the actions of the Pierce County Council." Mary Harris states in her affidavit supporting the petition that she "reside[s], own[s] property which is subject to condemnation by Ordinance 90-6 and [is] registered to vote in Pierce County." The only interest alleged is economic: owning property that could be condemned. CAT has failed to allege an interest within the zone of interests protected by SEPA and therefore lacks standing for a constitutional writ of certiorari.

Additionally, CAT failed to establish the requisite injury. Where the plaintiff "alleges a *threatened injury* rather than an existing injury, [he or she] must also show that the injury will be 'immediate, concrete and specific'; a conjectural or hypothetical injury will not confer standing." *Leavitt*, 74 Wn. App. at 679 (quoting *Trepanier*, 64 Wn. App. at 383) (emphasis added.). Ordinance 90-6 states that "the County may acquire, by purchase or donation,

any portion of all of these three established trails." It also states that the final engineering plan must be approved by the Council as must any deviations from the plan. Upon final engineering plan approval, the portions so approved "may then be acquired by eminent domain." Whether Harris's property would be subject to eminent domain appears to depend on the makeup of the final engineering plan and any deviations therefrom. Accordingly, whether her property would be subject to condemnation is completely conjectural and speculative at this point. *See Concerned Olympia Residents for Env't*, 33 Wn. App. at 683-84. Thus, CAT and Harris have failed to establish standing.

■ Finally, CAT argues that even if a statutory writ of review is inappropriate, it has an independent right of appeal under SEPA generally, and RCW 43.21C.075(1) specifically. We reject this contention on two grounds. First, CAT was not entitled to review under RCW 43.21C.075(1) because it failed to request such review. In its petition CAT states that it is seeking review only under RCW 7.16.030–.140, governing statutory writs, and Pierce County Code § 17.08.260. Pierce County Code § 17.08.260 implements *administrative review under SEPA* but does not provide for *judicial review*. A county ordinance cannot confer superior court jurisdiction.

■ Second, although CAT appears to be correct in its assertion that SEPA statutes provide an independent right of review, CAT was not entitled to such review because it lacked standing. SEPA grants an aggrieved person the right to judicial review on the issue of whether an agency complied with SEPA. *State v. Grays Harbor County*, 122 Wn.2d 244, 248, 857 P.2d 1039 (1993). In order to obtain review under SEPA statutes, however, the petitioner must establish standing. *See Save a Valuable Env't v. Bothell*, 89 Wn.2d 862, 576 P.2d 401 (1978). And CAT does not have standing to secure SEPA review.

■ In conclusion, CAT was not entitled to a statutory writ of review because the County's actions were legislative in nature. Additionally, because CAT failed to estab-

lish standing, review was also unavailable under a constitutional or common law writ of review or under SEPA. Accordingly, we affirm the trial court's dismissal of CAT's petition. This ruling eliminates the need to address CAT's SEPA claims regarding the FEIS.

## II. Refusal to Conduct In Camera Review.

In August 1994,[4] CAT moved the court to compel disclosure of a memorandum prepared by the County's legal counsel, regarding the sufficiency of the EIS for the Foothills Linear Park/Trail.[5] The County argued that the memorandum was exempt from public disclosure under RCW 42.17.310(i) and (j). The trial court, without explanation and without viewing the document, denied CAT's motion to compel.

The Washington public disclosure act provides that all public records be made available for inspection and copying. RCW 42.17.270. There are, however, a number of exceptions to this rule requiring disclosure. See RCW 42.17.310. An agency refusing to disclose a record bears the burden of proof that the requested record falls within an exception. RCW 42.17.340 (1); *Overlake Fund v. Bellevue*, 60 Wn. App. 787, 793, 810 P.2d 507, *review denied*, 117 Wn.2d 1022 (1991) (*Overlake Fund* I).

We hold that the trial court did not err in refusing to review the requested memorandum in camera because the pleadings clearly showed that it was exempt from public disclosure. RCW 42.17.310(1)(j) recognizes that the following documents are exempt from public disclosure:

Records which are relevant to a controversy to which an agency is a party but which records would not be available to

[4]This motion was made nine months after the Pierce County Council denied CAT's request for the memorandum. There is no evidence in the record explaining CAT's delay in bringing this motion.

[5]Apparently, this memorandum was prepared for the Council when CAT sought review of the Hearing Examiner's conclusion that the EIS was adequate.

another party under the rules of pretrial discovery for causes pending in the superior courts.

The memorandum was not discoverable because it fell within the work product rule and the attorney client privilege. Under the work product doctrine,

> a party may obtain discovery of documents and tangible things otherwise discoverable . . . and prepared in anticipation of litigation . . . only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means. . . .

CR 26(b)(4); *see also Overlake Fund v. Bellevue (Overlake Fund* II), 70 Wn. App. 789, 794-95, 855 P.2d 706 (1993), *review denied,* 123 Wn.2d 1009 (1994). Here, the requested memorandum was prepared in anticipation of litigation. Legal counsel prepared the memorandum to assist the County Council in disposing of CAT's appeal regarding the sufficiency of the EIS. Counsel was likely aware that denial of CAT's appeal would result in subsequent litigation. Indeed, the County's response to CAT's motion to compel states that the requested document is a memorandum, "containing opinions and recommendations from the Council's consultant to assist them in making a decision on a controversial, quasi-judicial matter *which was expected to proceed (and has proceeded) into further litigation.*" (Emphasis added.)

Moreover, CAT has not demonstrated a substantial need for the memorandum or that it could not obtain the substantial equivalent of the information by other means. CAT states that it believes the memorandum includes a summary of facts, identification of legal issues, opinion of counsel and recommendations for council action. Having been involved in the EIS process, and having appealed the adequacy of the EIS to the Hearing Examiner, CAT was and is in possession of all the relevant facts and issues. CAT is not entitled to disclosure of the mental impres-

sions, conclusions, opinions, or legal theories of the county's legal advisor that were prepared in anticipation of litigation. *See* CR 26(b)(3). The work product rule applies and exempts the memorandum from disclosure.

Discovery of the memorandum was also precluded by the attorney-client privilege. This privilege is codified at RCW 5.60.060(2):

> An attorney or counselor shall not, without the consent of his or her client be examined as to any communication made by the client to him or her, or his or her advice given thereon in the course of professional employment.

In his affidavit, the County's lawyer states that he wrote the memorandum to assist the County Council in its disposition of CAT's appeal. Accordingly, we hold that the memorandum was unavailable under the pretrial discovery rules and that it is therefore exempt from public disclosure under RCW 42.17.310(j).

Finally, we address CAT's contention that the trial court abused its discretion in refusing to conduct an in camera review of the memorandum to determine if portions of it could be disclosed. RCW 42.17.340 permits the examination of any record in camera to determine whether it is subject to the public disclosure act. Whether in camera review is necessary is generally left to the discretion of the trial court. *See Overlake Fund* I, 60 Wn. App. at 796-97. Accordingly, we review the trial court's decision for abuse of discretion.

In camera review may be necessary when the court cannot evaluate the asserted exemption without more information than is contained in the affidavits. *Overlake Fund* I, 60 Wn. App. at 797. Here, the trial court did not abuse its discretion in declining to view the memorandum in camera. The memorandum contains legal opinions and recommendations. The trial court could ascertain that the attorney-client privilege and the work product rule applied by viewing the parties' memoranda regarding the motion to compel and their supporting affidavits. Accord-

ingly, it was not necessary for the court to view the document in camera before ruling on whether the memorandum was subject to disclosure. The court's refusal to do so was not an abuse of discretion; it was mindful of judicial economy.

In sum, the requested legal memorandum was not discoverable under the work product rule and the attorney-client privilege. Because the trial court could make such a determination on the face of the pleadings and supportive affidavits, in camera review was unnecessary. Accordingly, we hold that the trial court did not abuse its discretion in ruling on the motion without viewing the memorandum. Affirmed.

BRIDGEWATER and ARMSTRONG, JJ., concur.