Bjorgen, C.J.
¶28 (dissenting) —At issue in this appeal is whether Puyallup Ordinance 3067 is the sort of site-specific rezone that must be challenged in superior court under the Land Use Petition Act (LUPA), chapter 36.70C RCW, or whether it is in the nature of a comprehensive plan amendment or the sort of development regulation that must be challenged through the Growth Management Hearings Board under the Growth Management Act (GMA), chapter 36.70A RCW. Because I believe it is of the former type, I dissent.
¶29 Ordinance 3067, adopted in 2014, extended an amended version of the Shaw-East Pioneer Overlay Zone (SPO) onto three contiguous parcels of land, owned by Schnitzer West LLC, totaling approximately 22 acres. The Schnitzer parcels were part of a larger area annexed into the city of Puyallup (City) in 2012. The City intended to *445 extend the SPO onto all 13 commercially zoned parcels within the annexed area, but reached only the Schnitzer parcels through this 2014 ordinance. Before Ordinance 3067 was adopted, Schnitzer had requested, and the City approved, a rezone of this property from “Business Park” to “Limited Manufacturing” (ML) zoning. The City subsequently considered a development moratorium on the area that had been annexed, including the Schnitzer property, and Schnit-zer filed a short subdivision application for a 470,000 square foot warehouse on its property before the City could adopt the moratorium. The City then adopted Ordinance 3067, which, among other features, imposed a building size limitation of 125,000 square feet, drastically smaller than Schnitzer’s planned 470,000 square foot warehouse.
¶30 In sum, Ordinance 3067 rezoned only a 22 acre portion of the annexation area, consisting of Schnitzer’s three parcels on which it had already submitted a subdivision application for a specific development proposal. The effect of the rezone was to make Schnitzer’s specific warehouse proposal illegal.
¶31 The central statutory provisions governing whether Ordinance 3067 may be challenged under LUPA are RCW 36.700020(2) and RCW 36.70B.020(4). As pertinent, RCW 36.70C.020(2)(a) specifies that a “land use decision” subject to LUPA is a determination by a local jurisdiction on an “application for a project permit or other governmental approval required by law before real property may be . . . developed . . . but excluding applications for . . . legislative approvals such as area-wide rezones.” RCW 36.70B.020(4), in turn, states that a “project permit” includes, among other matters, “site-specific rezones authorized by a comprehensive plan or subarea plan, but excluding the adoption or amendment of a comprehensive plan, subarea plan, or development regulations except as otherwise specifically included in this subsection.”
¶32 Woods v. Kittitas County, 162 Wn.2d 597, 610, 174 P.3d 25 (2007), made the effect of these provisions clear:
*446 [Growth Management Hearings Boards] do not have jurisdiction to decide challenges to site-specific land use decisions because site-specific land use decisions do not qualify as comprehensive plans or development regulations. Former RCW 36.70A.030(7) [(1997)]; RCW 36.70B.020(4); Wenatchee Sportsmen [Ass’n v. Chelan County], 141 Wn.2d [169,] 179[, 4 P.3d 123 (2000)]. A challenge to a site-specific land use decision should be brought in a LUPA petition at superior court. Wenatchee Sportsmen, 141 Wn.2d at 179 n.1.
¶33 Every element of the extension of the SPO to the Schnitzer parcels speaks to its site-specific nature. It is not a text amendment applicable throughout a zoning district. Cf. Raynes v. City of Leavenworth, 118 Wn.2d 237, 821 P.2d 1204 (1992). It neither involves nor requires a comprehensive plan amendment. Cf. Wenatchee Sportsmen, 141 Wn.2d at 179; Spokane County v. E. Wash. Growth Mgmt. Hr’gs Bd., 176 Wn. App. 555, 571-72, 309 P.3d 673 (2013), review denied, 179 Wn.2d 1015 (2014). To the contrary, the ordinance itself states that “[t]his ordinance would be supported by policies with the Comprehensive Plan Community Character Element” and then lists those policies in detail. Clerk’s Papers at 205-06.
¶34 In addition, the ordinance affects only three parcels totaling around 22 acres in size, far below the nearly 40 acre commercial planned unit development deemed quasi-judicial in Citizens for Mount Vernon v. City of Mount Vernon, 133 Wn.2d 861, 874-75, 947 P.2d 1208 (1997). In doing so, the ordinance carves these three parcels away from similarly situated ones. First, the ordinance stated that the city council intended to extend the SPO into the annexation area upon annexation. The ordinance, however, affected only the three Schnitzer parcels, leaving the rest of the annexation area untouched. Second, although the city zoning map shows land zoned ML in the immediate vicinity, the three Schnitzer parcels were the only ML-zoned land affected by Ordinance 3067. These distinctions do not necessarily signal any substantive legal flaws in the ordinance. *447 They do, however, help show the ordinance’s relentless spotlight on the Schnitzer site.
¶35 Context, also, is telling. As noted, Schnitzer filed a subdivision application for a 470,000 square foot warehouse on the property before the adoption of Ordinance 3067. The ordinance made that impossible. Thus, both the scope and the purpose of extending the SPO onto Schnitzer’s three parcels show that it was not an adoption of legislative or area-wide policy, but rather a rezone of a specific, relatively small property in the context of a development proposal on that property. Even if this is entirely legal and in the public interest, it is unmistakably site specific.
¶36 The majority holds, though, that the ordinance is not subject to LUPA because the zoning change it made was not requested by a “specific party,” but rather was initiated by the City. This conclusion rests on the following statement in Spokane County, 176 Wn. App. at 570:
The rezone was certainly site specific. See Woods, 162 Wn.2d at 611 n.7 (stating a site-specific rezone is a change in the zone designation of a “ ‘specific tract’ ” at the request of “ ‘specific parties’ ” (quoting Cathcart-Maltby-Clearview Cmty. Council v. Snohomish County, 96 Wn.2d 201, 212, 634 P.2d 853 (1981))). But the parties dispute whether the rezone was or needed to be “authorized by a comprehensive plan.” RCW 36.70B.020(4).
This statement, however, should not be taken as a holding that a rezone initiated by local government can never be subject to LUPA.
¶37 First, whether a rezone must be initiated by a party other than the local government to be deemed “site specific” was neither disputed nor analysed in the Spokane County decision. Instead, the court examined whether the rezone was authorized by a then-existing comprehensive plan or whether it was premised on and carried out an amendment to the plan. Id. at 571-72. In addition, the rezone was proposed by the applicant, not by the City, so the status of a city-proposed rezone was not at issue. For these reasons, *448 the requirement of “specific parties” in Spokane County is dicta at best.
¶38 The authority on which Spokane County relies, Woods, 162 Wn.2d at 611 n.7, is appended to Woods’ description of the holding in Wenatchee Sportsmen: that a challenge to a rezone under LUPA is limited to its compliance with zoning requirements or urban growth area restrictions, not the GMA itself. See id. at 611. Thus, Woods cannot be taken as authority for a rule that a rezone initiated by local government can never be subject to LUPA.
¶39 In the absence of analysis and the presence of dicta drawing on further dicta, neither Woods nor Spokane County can be taken as authority that a rezone initiated by a local government can never be deemed site specific under LUPA. To the contrary, an express holding of Spokane County suggests the opposite:
[W]e hold a site-specific rezone is a project permit approval under LUPA if it is authorized by a then-existing comprehensive plan and, by contrast, is an amendment to a development regulation under the GMA if it implements a comprehensive plan amendment.
Spokane County, 176 Wn. App. at 572. Ordinance 3067 made clear that its rezone was authorized by the existing comprehensive plan and did not implement any amendment to that plan. As shown, this rezone was site specific in purpose and effect. Thus, under this holding of Spokane County, it may be challenged under LUPA.
¶40 Finally, the purpose of the distinction between site-specific and legislative actions counsels that Ordinance 3067 is subject to review under LUPA. Our Supreme Court has cautioned against overreliance on writ of certiorari case law in interpreting LUPA. Chelan County v. Nykreim, 146 Wn.2d 904, 930, 52 P.3d 1 (2002). Nonetheless, it seems transparent that the fault line between site-specific approvals that may be challenged under LUPA and legislative approvals that go to the Growth Management Hearings *449 Board runs parallel to the divide before LUPA between adjudicatory or quasi-judicial decisions subject to the writ and legislative decisions that are not. See, e.g., Westside Hilltop Survival Comm. v. King County, 96 Wn.2d 171, 634 P.2d 862 (1981); Parkridge v. City of Seattle, 89 Wn.2d 454, 573 P.2d 359 (1978); Raynes, 118 Wn.2d 237.
¶41 Our Supreme Court has recognized that
[d]etermining that an action is legislative or adjudicatory is more than a matter of semantics; different consequences follow such a determination. Legislative action is far more impervious to review than is adjudication. The “arbitrary or capricious” standard which legislative actions must meet is not nearly as stringent or exacting and is difficult to prove. Adjudicatory functions must also meet the “clearly erroneous” or “substantial evidence” tests, as well as negotiate the due process hurdles of “notice”, “hearing”, and the “appearance of fairness”.
Westside Hilltop, 96 Wn.2d at 176. Similarly, in Parkridge, 89 Wn.2d at 460, the court noted that
[i]n a rezone action, adjudicatory in nature, the required relationship to the public interest is not to be presumed as it would be in an original comprehensive zoning action by the city council, which we have held to be legislative in nature.
¶42 These distinctions, in a word, recognize that adjudicatory or site-specific actions by their nature merit a more searching review than do legislative ones. The more an action resembles the work of a court, the more it involves specific parties and a specific tract, Cathcart-Maltby-Clearview Cmty. Council, 96 Wn.2d at 212, and the more it involves application of existing law to the facts rather than a response to changing conditions through the enactment of a general law of prospective application, Raynes, 118 Wn.2d at 244-45, then the more it calls for the scrutiny given adjudications, rather than the deference given legislation.
¶43 Whether a rezone is proposed by a property owner, a neighbor, or the local government has little to do with these *450 distinctions. If, as here, the rezone is confined to a specific tract, is not an implementation of a comprehensive plan amendment, is not a text amendment applicable generally to a zoning district, involves the application of existing law to fact, and is made in the context of a specific development proposal, it is adjudicatory and merits the type of review reserved for administrative adjudications.
¶44 Similarly, we should not conclude that by using the term “application” in RCW 36.70C.020(2)(a) the legislature intended to abandon these distinctions for measures proposed by a governmental entity. Such a conclusion would sacrifice long-standing case law designed to ensure the proper type of review on the doubtful basis of a single term capable of a range of meanings. This doubt is underlined by Spokane County’s use of “request,” not “application,” in its description set out above of a site-specific rezone. 176 Wn. App. at 570.
¶45 Ordinance 3067 should be subject to the type of review reserved for adjudications. That review is afforded by the standards of LUPA, not by those of the Growth Management Hearings Board.
¶46 For these reasons, the superior court correctly denied the City’s motion to dismiss based on its claim that the ordinance was not a “land use decision” subject to review under LUPA. We should proceed to the merits of the City’s appeal of the superior court’s decision.
Review granted at 187 Wn.2d 1025 (2017).