IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| CLARK COUNTY BANCORPORATION, a Washington corporation,<br><br>      Appellant,<br><br>    v.<br><br><br>WASHINGTON STATE DEPARTMENT OF FINANCIAL INSTITUTIONS,<br>      Respondent. | No. 84641-8-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

CHUNG, J. — The Washington State Department of Financial Institutions (Department) seized a bank owned by Clark County Bancorporation (CCB) and appointed the Federal Deposit Insurance Corporation (FDIC) as receiver in early 2009. More than 12 years later, CCB brought this mandamus action to force the Department to comply with chapters of state law relating to such seizures and court-appointed receivers, including requirements regarding the dissolution of a seized bank. The trial court dismissed the claim under CR 12(c). Because there is no set of facts under which CCB can establish the Department owes it a nondiscretionary duty, we affirm.

BACKGROUND

The Department regulates banks chartered in Washington State. RCW 30A.04.005 (Washington Commercial Bank Act). In 2008, the Department seized the Bank of Clark County, a Washington bank owned by CCB, pursuant to its

powers under RCW 30A.44.010.[1] In January 2009, the Department appointed the FDIC as receiver to liquidate the bank under RCW 30A.44.270(2). The parties do not dispute that the FDIC properly accepted the Department's appointment.

CCB filed numerous lawsuits in federal and state courts relating to the seizure and receivership.[2] This lawsuit was filed in 2021 and seeks a writ of mandamus "directing the [Department] to comply with . . . RCW §§ 7.60.005, et seq. and RCW §§ 30A.44.010, et seq.," which are the statutes governing judicially appointed receivers and the liquidation of insolvent state banks under the Washington Commercial Bank Act. The Department filed a motion to dismiss, which the court granted under CR 12(c). CCB timely appealed.

---

[1] After CCB's bank was seized, the Legislature recodified the statute relating to the insolvency and liquidation of commercial banks as chapter 30A.44 RCW. Laws of 2014, ch. 37, §§ 4, 223-243 (effective January 5, 2015). As Appellants refer to the current statute, chapter 30A.44 RCW, we do as well.

[2] In 2013, CCB filed a federal lawsuit in the U.S. District Court for the District of Columbia including "constitutional challenges, administrative-law claims, and statutory causes of actions," and seeking damages, declaratory relief, injunctive relief, and a writ of mandamus against defendants the United States, the Department of Treasury and its Acting Commissioner, the Internal Revenue Service and its Acting Commissioner, and the FDIC and its Acting Chairperson. Clark County Bancorporation v. United States Dep't of Treasury, et al., No. 13-632 (JEB), 2014 WL 5140004, at *1 (D.D.C. Sept. 19, 2014). The court dismissed all claims against all defendants. Id. at *16.

In 2014, CCB filed three other federal lawsuits, one in the District of Columbia and two in the Western District of Washington, including claims against the FDIC and the Receiver over tax refunds for tax years prior to the bank seizure; the full procedural history is recounted in the district court's opinion dismissing the claims in two of the lawsuits, which were consolidated. Clark County Bancorporation v. Fed. Deposit Ins. Corp., Nos. 3:14-cv-05816-BHS and 3:14-cv-05852-BHS, 2019 WL 157942, at *2-*4 (W.D. Wash. Jan. 10, 2019), aff'd, 848 Fed. App'x 321, 322 (9th Cir. 2021), cert. denied, 142 S. Ct. 2676, 212 L. Ed. 2d 763 (2022).

In 2018, CCB sued the Department in Clark County Superior Court for a writ of mandamus removing the FDIC as receiver. Clark County Superior Court No. 18-2-01700-2. It then voluntarily dismissed its suit.

<u>DISCUSSION</u>

CCB assigns error to the court's decision to grant the Department's motion to dismiss.[3] We review a motion for judgment on the pleadings under CR 12(c) identically to a motion to dismiss for failure to state a claim, CR 12(b)(6). <u>P.E. Sys., LLC v. CPI Corp.</u>, 176 Wn.2d 198, 203, 289 P.3d 638 (2012). Thus, a trial court must presume that the complaint's allegations are true, and it may consider hypothetical facts. <u>Id.</u> at 210-11. Dismissal under CR 12(c) is appropriate only if it is beyond doubt that the plaintiff cannot prove any set of facts to justify recovery. <u>Id.</u> at 210. We review dismissal under CR 12(c) de novo. <u>Id.</u> at 203.[4]

I.       <u>Requirements for a Writ of Mandamus</u>

CCB appeals the trial court's dismissal of its claim for a writ of mandamus. A writ of mandamus, "in plain English," is a petition asking a court to force a government official to perform a nondiscretionary duty. <u>Colvin v. Inslee</u>, 195 Wn.2d 879, 884, 467 P.3d 953 (2020). It is "rare and extraordinary" because that is something separation of powers usually forbids. <u>Id.</u> at 890-91. The writ thus reflects the judicial branch's limited role to "say what the law is." <u>Id.</u> at 892 (quoting <u>Marbury v. Madison</u>, 5 U.S. (1 Cranch) 137, 177, 2 L. Ed. 60 (1803)). Therefore, the writ "is no more effective than the statute [at issue]." <u>Id.</u> at 892-93 (citing <u>State ex rel. Hawes v. Brewer</u>, 39 Wn. 65, 68-69, 80 P. 1001 (1905)).

---

[3] CCB also alleges error because "CCB's constitutional property and due process rights have been violated." But CCB filed, in its own words, a "one-count complaint sounding in statutory mandamus" that did not include these constitutional claims, <u>see</u> Br. of App. at 3; CCB cannot raise such claims for the first time on appeal. To the extent CCB raises additional assignments of error, these arguments relate to the propriety of the Department's motion to dismiss, so we need not address them as separate arguments.

[4] The trial court's order notes, "To the extent information was submitted and considered beyond the initial pleadings, this dismissal would also be appropriate pursuant to Civil Rule 56."

The requirements for a writ of mandamus are set out in RCW 7.16.150-.280. Writ proponents must show three elements: that a government official has a clear duty to act, that the proponent has no other plain, speedy and adequate remedy in the ordinary course of law, and that the proponent is beneficially interested. Colvin, 195 Wn.2d at 894 (citing RCW 7.16.160, .170). Petitioners have the "demanding" burden of proving all three elements. Id. (citing Eugster v. City of Spokane, 118 Wn. App. 383, 403, 76 P.3d 741 (2003)) (internal quotation marks omitted).

Writs of mandamus are subject to two separate standards of review, depending on the question reviewed. Cost Mgmt. Servs., Inc. v. City of Lakewood, 178 Wn.2d 635, 648, 310 P.3d 804 (2013). Whether a statute specifies a duty that the person must perform is a question of law that an appellate court reviews de novo. Id. at 649. We review for abuse of discretion the trial court's determination of whether there is a plain, speedy, and adequate remedy in the ordinary course of the law. Id. The trial court abuses its discretion only if the decision "was manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons." River Park Square, LLC v. Miggins, 143 Wn.2d 68, 76, 17 P.3d 1178 (2001) (citing State ex rel. Carroll v. Junker, 79 Wn.2d 12, 26, 482 P.2d 775 (1971)). "If the trial court's ruling is based on an erroneous view of the law or involves application of an incorrect legal analysis it necessarily abuses its discretion." Dix v. ICT Group, Inc., 160 Wn.2d 826, 833,

---

CCB cites the appropriate standard for our review as de novo and does not argue that the trial court should have treated the motion as a CR 56 motion. Therefore, we review the dismissal as pursuant to CR 12(c)).

161 P.3d 1016 (2007). But if the question of whether an adequate remedy exists turns on regulatory or statutory interpretation, the question is one of law that we review de novo. Cost Mgmt. Servs., 178 Wn.2d at 649 n.5.

The Department does not dispute that CCB can satisfy the third element for a statutory writ, that CCB is beneficially interested.[5] The parties focus their arguments on the other two elements, whether a governmental official has a clear duty to act and whether the plaintiff has no other plain, speedy, and adequate remedy at law.[6]

II.      Clear Duty to Act

A mandatory duty exists when a constitutional provision or statute directs a state officer to take some course of action. Brown v. Owen, 165 Wn.2d 706, 724, 206 P.3d 310 (2009). Because it can only require what the statute requires, "mandamus may not be used to compel the performance of acts or duties which involve discretion on the part of the public official." Walker v. Munro, 124 Wn.2d 402, 410, 879 P.2d 920 (1994). It is appropriate only when the law "prescribes and defines the duty to be performed with such precision and certainty as to

---

[5] The beneficial interest element involves the concept of standing. Eugster, 118 Wn. App. at 403. An individual has standing to bring an action for mandamus, and is therefore considered to be beneficially interested, if he has an interest in the action beyond that shared in common with other citizens. Retired Pub. Employees Council of Washington v. Charles, 148 Wn.2d 602, 616, 62 P.3d 470 (2003) (citing State ex rel. Lay v. Simpson, 173 Wn. 512, 513, 23 P.2d 886 (1933)).

[6] CCB challenges the court's ruling that it "did not possess jurisdiction in an action for mandamus." "The term 'subject matter jurisdiction' is often confused with a court's 'authority' to rule in a particular manner." In re Marriage of Major, 71 Wn. App. 531, 534, 859 P.2d 1262, 1265 (1993). "A court . . . does not lack subject matter jurisdiction solely because it may lack authority to enter a given order." Marley v. Dep't of Labor & Indus., 125 Wn.2d 533, 539, 886 P.2d 189, 193 (1994). That is the case here, as CCB's "jurisdictional" arguments focus on what is required by the receivership and bank insolvency statutes, RCW 7.60.005, et seq. and RCW 30A.44.010, et seq. These arguments relate to whether CCB can satisfy the requirements for the court to issue a writ of mandamus, specifically, whether the Department has a "clear duty to act," and are addressed below.

leave nothing to the exercise of discretion or judgment." State ex rel. Clark v. City of Seattle, 137 Wash. 455, 461, 242 P. 966 (1926) (internal citations omitted), quoted in Colvin, 195 Wn.2d at 893. Moreover, there is a difference between a specific, existing duty a state official has violated and a general course of official conduct. Walker, 124 Wn.2d at 408-09. Finally, "even a mandatory duty is not subject to mandamus unless it is also ministerial, or nondiscretionary, in nature." SEIU Healthcare 775NW v. Gregoire, 168 Wn.2d 593, 599, 229 P.3d 774 (2010).

CCB's mandamus complaint sought a writ ordering the Department to comply generally with entire chapters of law regarding court-appointed receivers, RCW 7.60.005, et seq., and the seizure of insolvent banks, RCW 30A.44.010, et seq. In briefing, CCB identified four non-discretionary duties it alleges the Department owed CCB: to seek superior court approval, to use a court-appointed receiver, to generally follow state statutory requirements for receiverships and liquidation despite having appointed the FDIC as receiver, and to call a meeting of its bank's stockholders. Despite the lack of specificity in the complaint,[7] as the Department had notice of these theories and made responsive arguments, we address each of these alleged duties.

## A. Duty to seek court approval of actions

Chapter 30A.44 RCW governs the Department's obligations and subsequent proceedings relating to insolvent commercial banks. CCB claims that

---

[7] A complaint may be "insufficient when it does not give the opposing party fair notice of what the claim is and the ground upon which it rests." Nw. Line Constructors Chapter of Nat. Elec. Contractors Ass'n v. Snohomish Cnty. Pub. Util. Dist. No. 1, 104 Wn. App. 842, 848-49, 17 P.3d 1251 (2001) ("While [plaintiffs'] complaint implies that PUD is generally in violation of RCW 54.04.070, nowhere does it identify or even fairly imply the specific legal theories [plaintiffs] raised at summary judgment.").

the statute requires the Department to seek court approval of certain actions. To the contrary, the statute provides different options for the Department with regard to failing banks and does not mandate court approval.

CCB argues that RCW 30A.44.050 requires the Department, after seizing a bank, to "dispose of, ' . . . the business and assets of such corporation. <u>With the approval of the superior court of the county in which such corporation is located . . . ,</u>' " citing RCW 30A.44.050.[8] Indeed, RCW 30A.44.050 grants the Department certain "[p]owers and duties" if it takes possession of an insolvent bank. But we agree with the Department that CCB misconstrues the statute.

Without CCB's editing, RCW 30A.44.050 states in relevant part:

> Upon taking possession of any bank, the director shall proceed to collect the assets thereof and to preserve, administer and liquidate the business and assets of such corporation. With the approval of the superior court of the county in which such corporation is located, he or she may sell, compound or compromise bad or doubtful debts, and upon such terms as the court shall direct borrow, mortgage, pledge or sell all or any part of the real estate and personal property of such corporation.

The court must give words in a statute their plain and ordinary meaning unless a contrary intent is evidenced in the statute. <u>Erection Co. v. Dep't of Labor & Indus.</u>, 121 Wn.2d 513, 518, 852 P.2d 288 (1993). The plain language states that the director "shall" collect the assets and preserve, administer, and liquidate the business and assets of the bank. The next sentence identifies additional discretionary actions that the director "may" take "with the approval of the superior court." The Legislature's use of both the words "may" and "shall"

---

[8] Br. of App. at 4 (emphasis in original).

indicates an intent for the two words to have different meanings: "may" is directory, while "shall" is mandatory. Id. at 519.

Here, nothing couples the Department's duty—to collect assets and preserve, administer, and liquidate the bank—with the discretionary acts that require court approval. CCB's interpretation to the contrary is unsupported by the plain, unedited language of the statute.

### B. Duty to seek judicial appointment of a receiver or approval of receiver's actions

Next, CCB complains the Department had duties under the general receivership statute, even though it appointed the FDIC as receiver. But RCW 30A.44.270 unequivocally gives the Department the discretion to appoint the FDIC as receiver without seeking judicial approval: "In the event of [an insolvent bank's] closing, the director may appoint the federal deposit insurance corporation as receiver or liquidator of such bank." RCW 30A.44.270(2) (emphasis added).

A court may also appoint a receiver for an insolvent bank pursuant to the general receivership statute.[9] RCW 7.60.025(1) states, "A receiver may be appointed by the superior court of this state in the following instances," and subsection (1)(w) specifically identifies as an eligible instance "the case of a state commercial bank" "under and subject to" certain provisions of the Washington

---

[9] CCB conceded in argument before the trial court that RCW 7.60 was "not necessarily relevant" and "not necessarily germane" because the "gravamen" of its complaint was RCW 30A.44. Nonetheless, as CCB cites RCW 7.60 in its arguments to this court, we address it.

Commercial Bank Act, including RCW 30A.44.100 and 30A.44.270.[10] The statute again uses the word "may" to indicate discretion. See Erection Co., 121 Wn.2d at 519. Further, the entity to whom such discretion is granted is the court, not the Department. Thus, while RCW 7.60.025 permits a court to appoint a receiver for an insolvent bank, neither the general receivership statute nor the commercial banking statute creates a mandatory, nondiscretionary duty for the Department to seek court appointment or approval.

Instead of seeking a court-appointed receiver, the Department opted to exercise its discretion to appoint the FDIC as receiver. CCB cannot establish, as a matter of law, that once the FDIC was appointed as receiver, the Department had a nondiscretionary duty to seek judicial appointment of a receiver or approval of any of the FDIC's actions as receiver under either RCW 30A.44.270 or the general receivership statute, RCW 7.60.025.

### C. Statutory duties after appointment of FDIC as receiver

CCB argues that appointing the FDIC as receiver did not "absolve[] [the Department] of its obligations." It contends the Department's duties "are continuing notwithstanding the identity of the receiver." The Department argues

---

[10] As discussed above, RCW 30A.44.270 allows the Department to appoint the FDIC as receiver. The other provision of the commercial banking statute CCB references is entitled "Receiver prohibited except in emergency," and it restricts courts from appointing a receiver for any bank "excepting only that a court otherwise having jurisdiction may in case of imminent necessity appoint a temporary receiver to take possession of and preserve the assets of such corporation." RCW 30A.44.100. In such a situation, the statute continues, "Immediately upon any such appointment, the clerk of such court shall notify the director in writing of such appointment and the director shall forthwith take possession of such bank, as in case of insolvency . . . ." RCW 30A.44.100. Thus, not only does RCW 30A.44.100 not establish a mandatory duty for the Department to seek judicial approval for a receiver, it prohibits the court from appointing a receiver except in certain circumstances. Further, in those circumstances, the clerk of court must notify the Department that it has appointed a receiver, which indicates that even then, the Department will not have initiated the appointment.

that, when it appoints the FDIC as receiver, the FDIC takes on all the Department's powers and duties, and the Department is prohibited by state and federal law from supervising the FDIC thereafter. We agree with the Department.

RCW 30A.44.270(1) states that the FDIC "is hereby authorized and empowered to be and act without bond as receiver or liquidator of any bank the deposits in which are to any extent insured by that corporation and of which the director shall have taken possession . . . ." Further, when the Department appoints the FDIC as receiver, "[the FDIC] shall have and possess all the powers and privileges provided by the laws of this state with respect to a liquidator . . . , and be subject to all the duties of such liquidator, except insofar as such powers, privileges, or duties are in conflict with the provisions of the federal deposit insurance act." RCW 30A.44.270(3) (emphasis added).

Federal law allows the FDIC to accept the Department's appointment as receiver, 12 U.S.C. § 1821(c)(3)(A), and the parties here do not dispute that the FDIC lawfully did so. Federal law further provides that the FDIC has all the state powers conferred on it by the Department and all the federal powers imposed on it by 12 U.S.C. § 1821. Id. § 1821(c)(3)(B). However, when acting as a receiver, the FDIC "shall not be subject to the direction or supervision of any other agency or department of the United States or any State in the exercise of its rights, powers, and privileges." Id. § 1821(c)(3)(C).

CCB claims that, to the contrary, the FDIC is obligated to follow state law unless it conflicts with federal law, "but no such conflict can exist [because] the federal law itself expressly provides that for a state-chartered bank, state law

applies." In support, CCB cites the first half of 12 U.S.C. § 1821(d)(11)(B)(i):

"When appointed as a receiver for a state-chartered bank, the federal FDIC

statute itself, ' . . .(A) <u>shall not supersede the law of any State</u> . . .' (emphasis

added), 12 U.S.C. § 1821(d)(11)(B)(i), thus Washington State law governs."[11]

CCB quotes this subsection out of context and has edited it in a highly

misleading fashion. 12 U.S.C. § 1821(d) is entitled "Powers and duties of

Corporation as conservator or receiver" and contains 20 subsections on topics

such as general powers, authority of receiver to determine claims, procedures for

determination of claims, accounting and recordkeeping requirements, and

fraudulent transfers. Subsection (d)(11) relates specifically to the topic of a

"Depositor preference." The first subsection, § 1821(d)(11)(A), describes the

order of priority for the payment of claims when any amounts resulting from a

liquidation are distributed, and the language CCB cites appears in the second

subsection, § 1821(d)(11)(B).[12] Thus, the language CCB quotes is limited to the

---

[11] Br. of App. at 29 (emphasis in original).
[12] In full, this section of the statute states as follows:

(11) Depositor preference
(A) In general
Subject to section 1815(e)(2)(C) of this title, amounts realized from the liquidation or other resolution of any insured depository institution by any receiver appointed for such institution shall be distributed to pay claims (other than secured claims to the extent of any such security) in the following order of priority:
(i) Administrative expenses of the receiver.
(ii) Any deposit liability of the institution.
(iii) Any other general or senior liability of the institution (which is not a liability described in clause (iv) or (v)).
(iv) Any obligation subordinated to depositors or general creditors (which is not an obligation described in clause (v)).
(v) Any obligation to shareholders or members arising as a result of their status as shareholders or members (including any depository institution holding company or any shareholder or creditor of such company).
(B) Effect on State law
(i) In general

topic of depositor preference and, specifically, the order of priority for the FDIC's payment of claims from a bank's liquidated assets.

Therefore, the Department is correct that when it appointed the FDIC as receiver, it gave the FDIC all its powers and duties as liquidator under RCW 30A.44.270(3). To the extent CCB contends the Department has a duty to ensure the FDIC as receiver follows state law, federal law governing the FDIC as receiver prohibits it from following the direction or supervision of the Department. 12 U.S.C. § 1821(c)(3)(C). And to the extent CCB's petition for a writ is directed at the FDIC's actions or omissions, the FDIC is not a party to this lawsuit.[13]

### D. Duty to call a stockholders meeting

Finally, CCB claims that RCW 30A.44.140 requires the Department to "call a meeting of the stockholders" of the bank being liquidated. The Department argues the statute does not apply because certain prerequisites have not been met. We agree with the Department.

RCW 30A.44.140 addresses "Liquidation after claims are paid." In relevant part, the statute provides:

> When all proper claims of depositors and creditors (not including stockholders) have been paid, as well as all expenses of administration and liquidation and proper provision has been made for unclaimed or unpaid deposits and dividends, and assets still

---

The provisions of subparagraph (A) shall not supersede the law of any State except to the extent such law is inconsistent with the provisions of such subparagraph, and then only to the extent of the inconsistency. . . .

12 U.S.C. § 1821(d)(11).

[13] "[I]t has been clear since 1821 that a state court cannot issue a writ of mandamus against a federal officer." 17A Charles A. Wright, Arthur R. Miller, Edward H. Cooper, and Vikram David Amar, Fed. Prac. & Proc. Juris. § 4213, at 46 (3d ed. 2007) (citing McClung v. Silliman, 19 U.S. (6 Wheat.) 598, 5 L. Ed. 340 (1821)).

remain in [the director's] hands, the director shall call a meeting of the stockholders . . . .

RCW 30A.44.140 (emphasis added). Therefore, a predicate fact to the application of this statute is that assets still remain in the possession of the Department.

Here, CCB's complaint does not allege any assets still remain; it is entirely silent about assets.[14] And CCB does not dispute that the bank's assets, if any, are in the possession of the FDIC as receiver, not the Department; in its briefing, it characterized the FDIC's receivership as "currently ongoing." To the extent tax refunds owed to its seized bank are assets, CCB states in its briefing that its complaint "does not involve . . . tax refunds."[15] As the complaint does not allege that assets still remain in the Department's possession, CCB cannot establish that, as a matter of law, the Department has a duty pursuant to RCW 30A.44.140 to call a stockholders meeting.

## CONCLUSION

The petitioner seeking a writ of mandamus must establish three elements: that a government official has a clear duty to act, that the proponent has no other plain, speedy and adequate remedy in the ordinary course of law, and that the proponent is beneficially interested. Colvin, 195 Wn.2d at 894 (citing RCW 7.16.160, .170). Here, CCB's complaint fails to establish any clear,

---

[14] "Typically a court will not consider a claim for relief outside of the pleadings." E. Valley Sch. Dist. No. 90 v. Taylor, 174 Wn. App. 52, 57, 295 P.3d 1224 (2013).

[15] App. Br. 13. See generally Clark County Bancorporation v. U.S. Dep't of Treasury, No. 13-632 (JEB), 2014 WL 5140004 (D.D.C. Sept. 19, 2014) (dismissing CCB's claims against the U.S. Treasury, I.R.S., and the FDIC for about nine million dollars' worth of tax refunds paid to the FDIC as receiver).

nondiscretionary duty that the Department owes to it relating to the seizure of its bank over 14 years ago.[16] Therefore, the trial court's dismissal of CCB's complaint under CR 12(c) was appropriate.

Affirmed.

_Chung, J._

WE CONCUR:

_Mann, J._          _Dwyer, J._

---

[16] As CCB has not established a duty, we need not address whether it can establish that it has no other plain, speedy, and adequate remedy.